[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Proceedings:
On July 9, 1997, by amended complaint, the plaintiff brought this action in negligence and recklessness against the defendants Yankee Restaurant Inc., Harold Ahl, Arthur Ahl and Brett Hope.
Thereafter, on December 1, 2000, the plaintiff withdrew the complaint CT Page 1537 against the defendants Harold Ahl and Arthur Ahl, and the defendant Yankee Restaurant was defaulted for failure to appear.
The trial of the matter was held on December 1, 2000. At the commencement of trial, the plaintiff withdrew the recklessness count against the defendant, Brett Hope, thus leaving only count seven — the count based in negligence.
I. SEVENTH COUNT: (Negligence as to Brett Hope)
A. Facts:
The defendant Yankee Restaurant is a neighborhood bar operated by the defendant Brett Hope.
The plaintiff testified that on August 8, 1995, he and his friend Edward Eldridge went to the Yankee Restaurant in East Hartford to consume alcoholic beverages and to watch a football game.
The plaintiff further testified that he and Eldridge were sitting at the bar in the Yankee Restaurant when a group of people ("group") entered the bar and went over to the pool table.[1] Also seated at the bar was an acquaintance of the plaintiff, Jay Albert.
Over the next one and one half hours, the plaintiff and Eldridge consumed a pitcher of beer. At the end of this one and one half hours, the group at the pool table directed a belligerent comment toward the people sitting at the bar. Thereafter, one of the group broke a glass which was cleaned up by an employee of the defendant. Sometime, thereafter, a member of the group broke a pool stick, pushed an employee of the defendant, and the group then headed for the door. On their way to the door, the group surrounded the plaintiff, words were exchanged and the plaintiff was either pushed or pulled to the floor. The plaintiff testified that after he landed on the floor three persons were on top of him.
Hospital and medical records introduced as evidence indicate that the plaintiff suffered a comminuted left distal radius fracture requiring closed reduction with K-wire fixation and application of an external fixator.
While at Hartford Hospital, the plaintiff spoke to an East Hartford Police Officer, Paul Buchanan, who was called to the emergency room to investigate this incident.
Edward Eldridge testified for the plaintiff. Eldridge testified that CT Page 1538 when he and the plaintiff arrived at the Yankee Restaurant there was a group of persons at the pool table. Eldridge further testified that after approximately one hour, the group became noisy and one member of the group, in a belligerent manner, asked Eldridge a question. Shortly thereafter, Eldridge went to the bathroom and was threatened inside the bathroom by a member of this group. Eldridge, however, did not report this threat to any employee and/or the defendant Hope. After exiting the bathroom, Eldridge resumed his seat next to the plaintiff. Approximately thirty minutes later, the group at the pool table came over to where Eldridge and the plaintiff were sitting. One member of the group yelled something at Eldridge. Eldridge then observed an employee get pushed and then Eldridge got pushed. Eldridge never saw the plaintiff fall but observed the plaintiff on the ground with three to four people on top of him.
In contrast to the plaintiff, Eldridge never testified that he heard or observed a glass and/or a pool stick being broken.
The defendant, Brett Hope, testified that there was a group at the pool table when the plaintiff and Eldridge entered the Yankee Restaurant. Hope testified that he was made aware by the bartender that the plaintiff, Eldridge and the group at the pool table were engaged in a verbal argument over the use of the pool table. Hope left the kitchen, and observed the plaintiff and Eldridge standing near the pool table and arguing with the group at the table. Hope told the plaintiff and Eldridge to move over to the other side of the bar and further told both factions to stop bickering.
Everything was peaceful until sometime thereafter when the bickering started again. In response Hope told the group by the pool table to leave the restaurant and refunded the cost of the pool game and a round of drinks. Hope testified that no glasses or pool sticks were broken by the group at anytime that night.
The group from the pool table made its way to the door. As the group passed by Eldridge and the plaintiff, the plaintiff and Eldridge said something to them. Immediately thereafter, the plaintiff and Eldridge "jumped" one member of the group and a fight started. Hope did not see the plaintiff fall to the ground, but after the group left the premises, Hope observed that the plaintiff's left wrist appeared to be injured.
Hope testified that in circumstances in which customers bicker with each other, it is his practice to ask the customers to calm down and if they cease bickering, they are allowed to stay. If, on the other hand, they continue to bicker or start up again, he tells them to leave the premises. If they refuse to comply, he notifies the police. CT Page 1539
On August 6, 1995, the plaintiff, Eldridge, and Hope spoke to Officer Buchanan about this altercation. Officer Buchanan's report was introduced as plaintiff's exhibit 1.
B. Findings:
The court finds that most of the testimony of the plaintiff, Eldridge, and Hope is riddled with inconsistencies, and for the most part is not credible. The court finds that the most credible version of what took place on August 6, 1995, at the Yankee Restaurant is contained in the police report (plaintiff's exhibit 1) and the hospital records, (plaintiff's exhibit 2.)
In the police report, the plaintiff indicated, inter alia, that after Hope asked the group at the pool table to leave, one of the group said something to Eldridge, a fight started and the plaintiff tried to break up the fight and fell to the ground. Eldridge also told the East Hartford officer that the plaintiff was injured trying to break up a fight. Further, according to the records of Hartford Hospital, the plaintiff told emergency room personnel that he was injured trying to break up a fight.
To prevail on a claim of negligence, the plaintiff must prove that the defendant owed the plaintiff a duty and that the defendant breached that duty.
On August 6, 1995, the plaintiff was a business invitee to Hope's establishment. Thus, Hope
. . . had the duty of exercising reasonable care and control to protect its invitees from dangers which might reasonably be anticipated to arise from the conditions of the premises or the activities taking place thereon
 Mehri v. Becker, 164 Conn. 516, 520 (1973)
For Hope to be found liable for a breach of this duty, therefore, the plaintiff must prove that a reasonable person, knowing what Hope knew or should have known, would have foreseen that a physical altercation was likely to result and that a reasonable person would have taken measures, other than those employed by Hope, to prevent that altercation.
The only possible evidence that Hope should have foreseen a physical altercation is Hope's statement to Officer Buchanan that "from the CT Page 1540 beginning, both groups of guys were loud and boisterous, like they were looking for a fight, " and the plaintiff's statement that ". . . . right away they gave Edward the finger and called him a a____." The court does not credit the plaintiff's testimony that prior to the physical altercation, a beer bottle and a pool stick were broken by the group. Said testimony is not corroborated by any other witness including Eldridge, Hope or Edward Gotowala.[2] Nor, is said testimony corroborated by the police report.
Despite the group's initial belligerence, as outlined in exhibit 1, the plaintiff testified that the group of assailants remained in the bar and acted in a peaceful manner for one to one and a half hours before a member of the group directed a single belligerent comment at the people sitting at the bar. In addition Eldridge testified that there was no problem with the group for the first hour. Thereafter, Eldridge went into the bathroom and was threatened by one of the members of this group. Eldridge did not, however, report this threat to any employee or to Hope. Notwithstanding this threat, Eldridge returned to his seat at the bar and stayed there with the plaintiff for an additional thirty minutes because he "didn't think [the situation] would escalate." Eldridge also testified that during this thirty. minutes, the group remained peaceable.
According to plaintiff's exhibit 1, at some point thereafter, Hope asked the group to leave. According to all accounts in the police report, the group complied with Hope's request and headed toward the door. Thereafter, words were exchanged with Eldridge and a fight started which the plaintiff attempted to break up.
The court finds that any initial concerns which Hope had about the potential for violence by the group were justifiably allayed by their peaceable presence within the bar for one and a half hours. Thereafter, the plaintiff claims that one member of the group directed a single belligerent comment toward the persons, including the plaintiff and Eldridge, sitting at the bar. In contrast Hope claims that the plaintiff and Eldridge were arguing with the group over the use of the pool table. Regardless, under either scenario, the plaintiff does not claim and the defendant does not admit that any threats or challenges to fight were uttered by any member of the group. Thus, these comment(s) were insufficient to put Hope on notice of the realistic potential for a physical altercation.
Furthermore, once these comment(s) were uttered, peace reigned in the bar for an additional period of time. Hope indicates that verbal sparing resumed between the plaintiff and Eldridge and the group, and, as a result, Hope requested that the group leave. Hope did not, however, CT Page 1541 testify that this verbal sparing was of a threatening, aggressive or belligerent nature. In contrast the plaintiff never indicated, either to the police officer or in his testimony, that prior to being asked to leave, the group uttered any additional comments. Thus, these latter comments by the group, if any, were also insufficient to put Hope on notice of the realistic potential for a physical altercation.[3]
Furthermore, the court is of the opinion that by removing one group from the bar, Hope took reasonable measures, under all the circumstances, to ensure the safety of his remaining patrons.
As an alternative theory, the plaintiff claims that Hope breached his duty of reasonable care by not hiring security to work at the Yankee Restaurant during the evening hours.
The court finds that the Yankee Restaurant is a quiet, neighborhood bar whose typical patron is middle-aged or older. The Yankee Restaurant does not offer entertainment on a regular basis nor does it charge admission. Further, the bulk of its income is derived from its lunch business.
In support of its claim, the plaintiff points to plaintiffs exhibits 15 and 16 which set out a number of prior instances in which the East Hartford Police Department was called to the Yankee Restaurant in the five years prior to the incident assault.
At trial Hope testified that he had owned the Yankee Restaurant since March 15, 1995 and that he had been a customer of the Yankee prior to 1995.
There is no evidence, however, that prior to March 15, 1995, Hope had witnessed any altercations at the Yankee. Although Hope testified he was aware of the police calls enumerated in plaintiff's exhibit 17, there was no testimony as to when (before or after the instant assault) Hope became aware of these incidents. In addition, Hope testified that prior to purchasing the Yankee he had had "very little" conversation with the seller about the patrons at the bar.
Further, during Hope's ownership, East Hartford Police records indicate that there was only one non physical altercation at the Yankee to which East Hartford Police Department responded. Thus, based on the evidence, the court finds that a reasonable man in Hope's position, knowing what Hope knew or should have known, would not have hired security to work evenings at the Yankee. Therefore, by failing to employ security personnel Hope breached no duty owed to the plaintiff.
Since the plaintiff has failed to sustain its burden of proof as to its CT Page 1542 claim of negligence, judgment enters in favor of the defendant Brett Hope.
II. FIRST AND SECOND COUNTS: (Negligence and Recklessness as to Yankee Restaurant, Inc.)
Damages
On December 1, 2000, a default was entered in favor of the plaintiff against the defendant Yankee Restaurant, Inc. for failure to appear at trial. Therefore, liability is not in issue as to these counts.
Based upon the evidence presented at trial, the court awards economic damages of $7,982.66. Since the plaintiff did not plead loss of income, the court does not include such in its award.
Based upon the testimony and evidence presented, the court awards non economic damages for pain and suffering and for the plaintiff's reduced ability to pursue life's activities in the amount of $58,000.
Thus, total damages are awarded in the amount of $65,982.66 as to each count.
As to the second count (recklessness), the court also awards attorney's fees in the amount of $22,000.00.
CONCLUSION
As to counts one and two, judgment is entered in favor of the plaintiff in the respective amounts of $65,982.66 and $77,982.66.
As to count seven, judgment is entered in favor of the defendant.
Counts three, four, five, six and eight were withdrawn by the plaintiff prior to trial.
Swords, J.